Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 469 - 1, 6 | **DATE** | 9/3/2002 |
| **CASE TITLE** | UNITED STATES vs. BAINBRIDGE MANAGEMENT, L.P., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The Bainbridge defendants' motions *in limine* 2 [167-2], 3 [167-3] and 4 [167-4] are granted. Motion *in limine* 1 [167-1] is denied.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 5 2002 date docketed | 183 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 9/3/2002 date mailed notice | |
| CB | courtroom deputy's initials | Date/time received in central Clerk's Office | PW mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 5 - 2002

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 CR 469 - 1, 6 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| BAINBRIDGE MANAGEMENT, L.P. and | ) | |
| BAINBRIDGE MANAGEMENT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Bainbridge Management L.P. ("Bainbridge, L.P.") and Bainbridge Management, Inc. ("Bainbridge, Inc.") are under indictment for health care fraud, mail and wire fraud, and racketeering. Both defendants move *in limine* to exclude evidence at trial.

## BACKGROUND

Bainbridge L.P. is a limited partnership operated by Bainbridge, Inc., a general partner. Bainbridge L.P. served as the exclusive operator of Edgewater Hospital and Medical Center ("Edgewater Hospital"). The indictment alleges Bainbridge L.P., Bainbridge, Inc., Edgewater Hospital employees and physicians engaged in a complex fraudulent scheme to obtain funds from Medicare, Medicaid, and private insurers. Specifically, the indictment alleges defendants unnecessarily hospitalized patients, performed unwarranted medical procedures, provided kickback payments for patient referrals, generated hospital admissions through cash payments and benefits to patients, and falsified hospital records. The individuals who allegedly participated in the scheme with Bainbridge L.P. and Bainbridge, Inc. include: Roger Ehmen, Edgewater Hospital's senior vice

1

183

president, Person A (an Edgewater administrator), Dr. Ravi Barnabas, Dr. Sheshiqiri Rao Vavilikolanu, Dr. Kumar M. Kaliana, and Dr. Andrew Cubria.

## DISCUSSION

### I. Standard of Review

The court excludes evidence on a motion *in limine* only if the evidence is clearly inadmissible for any purpose. *See Hawthorne Partners v. AT&T Technologies*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Motions *in limine* are disfavored; admissibility questions should be ruled upon as they arise at trial. *Id.* Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context. *Id.* at 1401. Denial of a motion *in limine* does not insure evidence contemplated by the motion will be admitted at trial. Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989); *Brom v. Bozell, Jacobs, Kenyon & Eckhardt*, 867 F. Supp. 686, 690-691 (N.D. Ill. 1994).

### II. Motions *in limine*

#### A. Name Confusion (Motion *in limine* 1)

The Bainbridge defendants move *in limine* to restrict use of multiple references to "Bainbridge Management" and identify an appropriate name to refer to each defendant at trial. The Bainbridge defendants are concerned that repeated use of "Bainbridge Management, L.P." and "Bainbridge Management, Inc." will confuse the jury as to evidence that relates to each entity. *See United States v. Coward*, 630 F.2d 229, 231 (4th Cir. 1980) (jury may be confused by similar names of separate defendants; evidence may be attributed to the wrong defendant); *United States v.*

2

*Branham*, 1987 WL 12252, at *4 (D. Del. Jun. 5, 1987) (same). The Bainbridge defendants suggest the use of "L.P." and "Inc." The government suggests general reference to defendants as "Bainbridge L.P." and "Management, Inc." This suggestion will aid the jury in differentiating between the two Bainbridge entities. Accordingly, the court and counsel will generally refer to Bainbridge Management, L.P. as "Bainbridge, L.P.," and Bainbridge Management, Inc. as "Management, Inc." However, counsel and the witnesses will not be prohibited from using defendants' full legal names. Motion *in limine* 1 is denied.

### B. Prejudicial Evidence (Motion *in limine* 2)

The Bainbridge defendants move to bar references to the deaths of two patients who were allegedly subjected to unnecessary medical procedures. The indictment refers to unnecessary angioplasties performed by Dr. Cubria that purportedly resulted in two patients' deaths. The Bainbridge defendants assert reference to patients' deaths is irrelevant and highly prejudicial. *See* Fed. R. Evid. 401, 403. In response, the government argues the Bainbridge defendants are responsible for the fatalities, and patients' deaths are central to the alleged scheme.

Relevant evidence has a tendency to make the existence of a fact that is of consequence to the action more probable than it would be without the evidence. Fed. R. Evid. 401. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. The indictment charges the Bainbridge defendants with mail and wire fraud, health care fraud, and racketeering. The crux of the indictment involves a kickback and bribery scheme. Physicians allegedly used unnecessary medical procedures to generate fees and obtain funds from Medicare, Medicaid, and private insurers. The alleged result of two particular unnecessary tests – the death of two patients – is not a fact central to the scheme. The patients' deaths are not

3

probative of the necessity of the medical procedures performed. Nor are the deaths probative of the elements of wire and mail fraud, racketeering, or health care fraud. The government asserts the jury should know the victims of the scheme. The direct victims in the indictment are the Medicare and Medicaid funds, and the private insurers who paid for unnecessary medical procedures. Further, any probative value of the evidence is substantially outweighed by its prejudicial effect. Evidence is unfairly prejudicial if it will "induce the jury to decide the case on an improper basis rather than on the evidence presented." *United States v. Miles*, 207 F.3d 988, 992 (7th Cir. 2000). Evidence about the death of two patients is inflammatory and likely to prejudice the jury against the corporate defendants who are not charged with causing the patient's deaths. Moreover, the challenged evidence would also raise collateral causation issues concerning patients' deaths. This would unduly lengthen an already protracted trial. Accordingly, motion *in limine* 2 will be granted.

### C. Co-Conspirator Statements (Motion *in limine* 3)

The Bainbridge defendants argue the government's initial and supplemental *Santiago* proffers fail to identify co-conspirator statements the government will offer at trial. Further, the Bainbridge defendants assert the *Santiago* proffers fail to identify the co-conspirators of the alleged scheme. The Bainbridge defendants move to exclude references to co-conspirator statements until the government establishes their admissibility at trial.

A statement is not hearsay under Rule 801(d)(2)(E) if it is made by a co-conspirator "during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The government must establish by a preponderance of the evidence: (1) the existence of a conspiracy; (2) the defendant and declarant were members of the conspiracy, and (3) the statements were made during the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United*

4

*States v. Hunt*, 272 F.3d 488, 497 (7th Cir. 2001). A defendant joins a conspiracy if he agrees with a conspirator to one or more of the common criminal objectives alleged in the indictment. *United States v. Boucher*, 796 F.2d 972, 975 (7th Cir. 1986). The court has a duty to screen proposed co-conspirator statements for admissibility. *United States v. Stephenson*, 53 F.3d 836, 842 (7th Cir. 1995); Fed. R. Evid. 104(a). A recognized way of bringing co-conspirator statements to the court's attention is through the filing of a pre-trial proffer. *See United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978).

The government's *Santiago* proffers are voluminous: the initial *Santiago* proffer is 74 pages, summarizes the testimony of 23 potential witnesses, and includes numerous FBI witness interview reports and plea agreements; the supplemental *Santiago* proffer is 44 pages, and it is devoted to reciting the testimony of 6 potential witnesses. Despite the detail, the proffers fail to specify the co-conspirator statements to be offered at trial and the manner in which the statements further the conspiracy. *See e.g. United States v. Messino*, 855 F. Supp. 973, 977-78 (N.D. Ill. 1994). Mere conversations between co-conspirators are not admissible under Rule 801(d)(2)(E). *United States v. Shoffner*, 826 F.2d 619, 627 (7th Cir. 1987). Proffered conspirator statements must further the objectives of the conspiracy, such as statements: (1) to recruit potential co-conspirators, *see Shoffner*, 826 F.2d at 628; (2) to control damage to an ongoing conspiracy, *see United States v. Van Daal Wyk*, 840 F.2d 494, 499 (7th Cir. 1988); (3) to keep co-conspirators advised of the progress of the conspiracy, *see United States v. Potts*, 840 F.2d 368, 371 (7th Cir. 1987); (4) to conceal the conspiracy, *see United States v. Kaden*, 819 F.2d 813, 820 (7th Cir. 1987); or (5) to execute the conspiracy, *see United States v. Cox*, 923 F.2d 519, 527 (7th Cir. 1991).

The government's *Santiago* proffers consist of voluminous summaries of witness testimony instead of specific proffers on the admissibility of potential hearsay statements. Co-conspirator statements are commingled seamlessly with background information, non-hearsay testimony, and details of the alleged crimes. In the initial *Santiago* proffer, the government states co-conspirator statements can be found in lengthy witness interview summaries, and attached FBI witness interview reports and transcripts of recorded conversations. The supplemental *Santiago* proffer adopts the same disfavored methodology. In short, the government's proffers would require the court to scour hundreds of pages of reports and transcripts looking for potential co-conspirator statements. Further, the government fails to sufficiently identify co-conspirators – the government does not state whether all 23 identified individuals in the initial *Santiago* proffer are co-conspirators. References to co-conspirator and their statements are often vague and conclusory. *See e.g. Santiago* Proffer, at p. 39 ("The co-conspirators frequently talk about what they need to do in order to avoid detection"). And the government fails to point to statements it seeks to admit at trial. The government does not recount the statements in the proffer or cite to statements in the attached witness interview summaries or reports.

A *Santiago* proffer should assist the court in making a pre-trial determination on the admissibility of evidence under Rule 801(d)(2)(E). Indeed, a *Santiago* proffer is generally an efficient method to allow the court to conditionally admit co-conspirator statements before trial. *United States v. Giles*, 67 F.Supp.2d 947, 953 (N.D. Ill. 1999). The government had the opportunity to submit two *Santiago* proffers in this case. Both proffers fail to provide a sufficient basis for the court to determine the admissibility of Rule 801(d)(2)(E) evidence before trial. A pre-trial hearing on the admissibility of co-conspirator's statements is disfavored because it would be duplicative of

6

evidence presented at trial. *United States v. Andrus*, 775 F.2d 825, 837 (7th Cir. 1985). Accordingly, the court will determine the admissibility of proffered co-conspirator statements as they arise at trial. *See Hunt*, 272 F.3d at 494 (court may rule on admissibility of co-conspirator statements at trial; written *Santiago* proffers is only one method to determine admissibility). Motion *in limine* 3 is granted.

### D.     Corporate Criminal Liability (Motion *in Limine* 4)

The Bainbridge defendants move to limit the government's theory of an agency relationship between Bainbridge. L.P., Bainbridge, Inc., and 43 individuals under Fed. R. Evid. 104(a) and 403. The government objects.

A corporation can act only through the conduct of its agents. *See* Seventh Circuit Federal Jury Instr., § 5.03; *United States v. Photogrammetric Data Serv.*, 259 F.3d 229, 242 (4th Cir. 2001). A corporation may be criminally liable when: (1) the offense charged was committed by an agent or employee of the corporation; (2) the agent or employee intended to benefit the corporation; and (3) the acts of the agent or employee were committed within the authority or scope of employment. *See* Seventh Circuit Criminal Jury Instr., § 5.03 (1999); *see also United States v. One Parcel of Land*, 965 F.2d 311, 316 (7th Cir. 1992); Federal Practice Criminal Jury Instr., § 18.05 (2001).

Pursuant to Fed. R. Crim. P. 16(a)(1)(A), the court ordered the government to disclose: (1) statements of individuals the government asserts are agents who legally bound Bainbridge, Inc. and Bainbridge, L.P. separately, and (2) identification of the agents who bound each defendant. *See United States v. Bainbridge*, 2002 WL 538777 (N.D. Ill. Apr. 10, 2002). In response, the government identified 12 individuals who are purportedly Bainbridge, L.P. employees, officers and directors, and 5 individuals who are allegedly Bainbridge, Inc. employees, officers, and directors.

7

The government asserted all Bainbridge, Inc. agents are also Bainbridge, L.P. agents and *vice versa*. Further, the government identified 26 Edgewater Hospital employees, contractors, and physicians and claimed those individuals are Bainbridge, L.P. and Bainbridge, Inc. agents. In sum, the government asserts 43 individuals acted as agents for the Bainbridge defendants, including physicians who were recipients of kickbacks in exchange for referring patients to Edgewater Hospital.

Corporate criminal liability requires the application of agency principles. *See One Parcel of Land*, 965 F.2d at 316. To impute criminal liability to a corporation, its officers, directors, or employees must have authority or apparent authority to act for the corporation. *United States v. Basic Constr.*, 711 F.2d 570, 573 (4th Cir. 1983); *see also* Brickey, *Corporate Criminal Liability*, § 3:02. Criminal liability is generally imposed when the acts of a corporate officer or executive were "actuated, at least in part, by a purpose to serve the master." *United States v. Gold*, 743 F.2d 800, 823 (11th Cir. 1984). Agents who are not officers, directors, or employees may act on behalf of a corporation if they possess actual or apparent authority. *See* Brickey, *Corporate Criminal Liability*, § 3:05 (independent contractors and subsidiary corporations can impute criminal liability). In support of its agency theory, the government asserts Bainbridge, Inc. exercised control over bonuses and salaries of Bainbridge, L.P.'s employees. But the government must demonstrate Bainbridge, L.P. employees had authority (actual or apparent) to act on behalf of Bainbridge, Inc. *See United States v. Basic Constr. Co.*, 711 F.2d 570, 573 (4th Cir. 1983) (actual or apparent authority required to impute liability); *United States v. 141st Street Corp.*, 911 F.2d 870 (2d Cir. 1990) (president's knowledge and consent of criminal activity imputes criminal liability to the corporation). Bainbridge, Inc.'s payment of Bainbridge, L.P. employee salaries does not necessarily establish

8

actual or apparent authority. *See* Brickey, *Corporate Criminal Liability*, § 3:03 ("The corporate entity must stand or fall with those who have been entrusted with responsible positions and who have been delegated corresponding power to act"). To be deemed Bainbridge agents, the physicians who purportedly received kickbacks must have: (1) authority to act for the corporation or partnership; (2) acted with the intent to benefit Bainbridge, Inc. and Bainbridge, L.P.; and (3) acted within the scope of the agency relationship. The government asserts the physicians' participation in the alleged conspiracy and receipt of kickbacks converts them to Bainbridge agents. The government confuses the distinction between an agent and a co-conspirator. To impute liability, a Bainbridge, Inc. or Bainbridge, L.P. agent must have intended to benefit the corporation or partnership, not merely his own interests.

The government bears the burden of demonstrating the existence of an agency relationship to impute liability to the Bainbridge defendants. The criminal liability of Bainbridge, L.P. and Bainbridge, Inc. for the acts of its employees and agents are jury questions. However, under Rule 403, the court may exclude evidence if it misleads or confuses the jury, or results in a waste of time. *See* Fed. R. Evid. 403. The government's response brief does not address the manner in which the 43 individuals can be deemed agents of Bainbridge, Inc. or Bainbridge, L.P. Nor does the government proffer evidence of the purported agency relationships. Further, the government's discussion of its agency theory suggests the jury could be misled as to the imputation of liability to the Bainbridge defendants. The government's identification of 43 individuals as the Bainbridge defendants' agents without any proof of a principal-agent relationship would cause unfair prejudice, be likely to confuse the jury, and be a waste of the jury's time. Under Rule 403, the court must

balance the probative value of evidence with its prejudicial impact. The probative value of the challenged evidence has not been demonstrated. Accordingly, motion *in limine* 4 is granted.

## CONCLUSION

The Bainbridge defendants' motions *in limine* 2, 3 and 4 are granted. Motion *in limine* 1 is denied.

September 3, 2002

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge